Alex WITMER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 20S03–0312–CR–614.

Supreme Court of Indiana.

Dec. 23, 2003.

Monica Foster, Foster & Long–Sharp, Robert J. Hill, Gilroy Kammen & Hill, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Office of the Attorney General, Indianapolis, IN, Attorneys for Appellee.

SHEPARD, Chief Justice.

It is hard to imagine that in this age two young white men could troll around town looking for an African–American to kill just so they could say they had done so. Charged as a capital defendant for his role in the killing that resulted, appellant Alex Witmer plea-bargained to avoid the death penalty. The trial court sentenced him to the maximum term of years. Among other aggravating circumstances, it found that the perpetrators' racial animus was a grounds for enhancing the sentence. We agree that racial motivation can be an aggravating circumstance, and we affirm the sentence.

### Statement of Facts

Alex Witmer committed robbery and murder in one two-year period. On March 25, 1998, sixteen-year-old Witmer pointed a gun at Preston Hall in Elkhart County during a "drug deal gone bad." Initially, Hall thought that Witmer was playing around, but Witmer pointed the rifle at Hall's throat and stated, "Give me your damn wallet." (App. at 53.) Hall complied, and Witmer took the wallet, which contained money. The State thereafter

charged Witmer with robbery on September 30, 1998, though it did not serve the warrant until November 1999.

Almost one and a half years after the robbery, Witmer, who had turned eighteen picked up Jason Powell and drove to the Pierre Moran Mall. Witmer had a .22 caliber rifle in his car. As they rode about town, Witmer and Powell discussed shooting an African–American to earn a tattoo of a spider web. Witmer told Powell that one earns the tattoo by killing a black person. Powell expressed an interest in "earning" the tattoo, and Witmer "called him on it," meaning "put up or shut up." (GPR at 24.)[1]

As they drove around the mall, Witmer and Powell noticed seventeen-year-old Sasezley Richardson walking through the Sears parking lot. (GPR at 25.) Neither of them knew Richardson. Powell told Witmer to drive towards Richardson. Witmer drove close to the victim as Powell picked up the rifle and began to shoot. Powell fired ten to twelve shots at Richardson. As they abandoned the scene, Witmer looked into the mirror and saw the victim fall to the ground. Witmer and Powell drove away, without rendering any aid. Richardson died from a gunshot wound to the head.[2]

Witmer drove Powell home and then returned to his house. He later took the rifle used in the shooting to his younger brother, who dismantled the gun and threw it in the river behind his father's house.

The State requested the death penalty against Witmer but later agreed to drop the request in return for a plea of guilty. (GPR at 29.) The trial court sentenced Witmer to twenty years for robbery and sixty-five years for murder, to be served consecutively. (App. at 136.) It found several aggravating circumstances: Witmer's history of criminal or delinquent activity,[3] his need for rehabilitative treatment best provided by commitment to a penal facility, that imposition of a reduced sentence would depreciate the seriousness of the crime, and the nature and selection of the victim—including the racial motivation of the perpetrators. It also found three mitigators: Witmer's age, his upbringing, and his psychological conditions.

On appeal, Witmer (1) challenged the "correctional need" and "depreciate the seriousness" aggravators, (2) claimed there were several mitigators that should have been found and that the court gave inadequate weight to some it did find, and (3) contended the resulting sentence was unreasonable. The Court of Appeals agreed that the "depreciate" finding was inappropriate, but otherwise rejected Witmer's claims and affirmed the sentence. *Witmer v. State*, No. 20A03–0208–CR–281, 790 N.E.2d 182 (Ind.Ct.App.2003). We grant transfer and summarily affirm its resolution of these points. Ind. Appellate Rule 58(A).

▮ Where a trial court has used an erroneous aggravator, as occurred here, the court on appeal can nevertheless affirm the sentence if it can say with confidence that the same sentence is appropri-

---

1. The "GPR" abbreviation is used to reference citation to the transcript of the guilty plea.

2. Witmer testified that he knew that Powell was going to shoot someone, but he was not certain that Powell would actually do it. (Pet. to Transfer at 2; GPR at 24–25.)

3. In addition to these events, Witmer had a previous history of delinquency, including charges for criminal mischief in teen court, three counts of battery, and possession of a firearm. (App. at 23.)

ate without it. *Day v. State,* 560 N.E.2d 641, 643 (Ind.1990).

### Racial Motivation as an Aggravator

■ The trial court relied in part on the manifest racism of Witmer's acts. As Judge Platt pointed out, Mr. Richardson was "executed because he [was] black and he [was] there." (App. at 134.) He said, "[In m]ost homicide cases the victim and the perpetrator have some relationship.... Mr. Richardson had the incredible tragedy to be behind Pierre Moran mall on the wrong day at the wrong time. It could have been any other dark skinned citizen of this community, no matter what race he or she may be. Be they Hispanic, ... Pakistan (sic), ... Indian, or have a good tan from the State of Florida." *Id.*

Although we have never explicitly held that choosing a victim based on race could be an aggravating circumstance, we have affirmed the notion that characteristics of the victims can support an enhanced sentence. In *Ajabu v. State,* 722 N.E.2d 339 (Ind.2000), for example, the defendant was convicted of three murders. We stated that Ajabu's "brutal method of killing and the number and ages of the victims" absolutely manifested a need for correctional treatment "to deal with the heinous conduct and reckless disregard for human life." *Id.* at 343. As in *Ajabu,* the trial judge in this case determined that the evidence detailed the extreme viciousness of the murders.

■ The sentencing statute's list of enumerated aggravating circumstances is not exclusive, of course, and we say without hesitation that racially motivated crimes are intolerable and may constitute an aggravating circumstance.

It is a conclusion embraced elsewhere. In *Barclay v. State,* 343 So.2d 1266 (Fla. 1977), five men picked up a white hitchhiker and took him to a remote location where Barclay stabbed him repeatedly before shooting him twice in the head. Barclay later sent tapes to the victim's mother and local television stations declaring a race war. He was found guilty, and the judge sentenced him to death. *Id.* The U.S. Supreme Court later granted certiorari and stated, "[t]he United States Constitution does not prohibit a trial judge from taking into account the elements of racial hatred in this murder. The judge in this case found Barclay's desire to start a race war relevant to several statutory aggravating factors. The judge's discussion is neither irrational nor arbitrary." *Barclay v. Florida,* 463 U.S. 939, 949, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983).[4]

Likewise, in *State v. McKnight,* 511 N.W.2d 389 (Iowa 1994), the Iowa Supreme Court determined that racial animus could be a factor without violating U.S. constitutional rights. In that case, two white males swerved at and hit the car of a black person, causing him to lose control of his vehicle. *Id.* at 390. The white men stopped and began to assault the black man and scream racial slurs at him. *Id.* The Iowa Supreme Court affirmed McKnight's conviction and upheld the hate crime statute that enhanced his sentence, rejecting a claim that the enhancement violated McKnight's First Amendment rights. *Id.* at 396–97.

### Conclusion

The trial court adequately assessed aggravating and mitigating factors, described why it considered each to be aggravating

---

4. The Court noted that Florida law prohibits reliance on non-statutory aggravating circumstances in sentencing a convicted person to death. *Barclay,* 463 U.S. at 985, 103 S.Ct. 3418. In contrast, Georgia permits a sentencer to rely on non-statutory aggravating factors as long as one valid aggravator is identified. *Id.* at 985 n. 17, 103 S.Ct. 3418.

or mitigating, and gave proper weight to each in enhancing on each count and ordering consecutive terms. Witmer had ample opportunity to try to stop the senseless murder of Richardson. Instead, he provoked the situation by encouraging Powell to earn a "spider web tattoo." Witmer and Powell were predators who attacked an innocent victim because of bigotry and lack of respect for human life. Sentence was appropriate.

We affirm the judgment of the trial court.

DICKSON, SULLIVAN, BOEHM, and RUCKER, JJ., concur.