Joseph KINCAID, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 20A04–0410–CR–560.

Court of Appeals of Indiana.

Dec. 29, 2005.

---

Kenneth R. Martin, Goshen, for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION ON REMAND

SHARPNACK, Judge.

Joseph Kincaid appealed his convictions and sentences for aggravated battery as a class B felony[1] and battery as a class B felony,[2] and we affirmed in part, reversed in part, and remanded. *Kincaid v. State*, 831 N.E.2d 288 (Ind.Ct.App. 2005). In part, we held that Kincaid had forfeited his claim under *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied*, because, although *Blakely* was decided two weeks before Kincaid's sentencing hearing, he failed to raise the claim to the trial court. *Kincaid*, slip op. at 19–21. The Indiana Supreme Court accepted transfer and held that Kincaid had not forfeited his *Blakely* claim.[3] *Kincaid v. State*, 837 N.E.2d 1008, 1010 (Ind.2005). The Court remanded and directed us to consider Kincaid's *Blakely* claim and reconsider his other sentencing claims in connection with the *Blakely* claim. *Id.* at 1009 n. 2. Thus, on remand, we address the following issues:

I. Whether Kincaid was sentenced in violation of *Blakely;* and

II. Whether Kincaid's sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm.

The facts relevant to the sentencing issues follow. The jury found Kincaid guilty of aggravated battery as a class B felony and battery as a class B felony for injuring his two-month-old son Alex. The evidence presented at trial indicated that Alex's injuries were consistent with "shaken baby with impact" where a baby is shaken and there is an impact against a surface. Transcript at 280, 282. As a result of the battery, Alex suffered a skull fracture, a brain hemorrhage that destroyed seventy-five percent of his brain, and bilateral retinal hemorrhages that left him blind. At the time of the trial, Alex was four years old and was unable to stand, sit, walk, speak, or swallow. He was at the developmental level of a six-month-old infant and had a life expectancy into his teenage years but not beyond twenty years of age.

The trial court found the following aggravating factors: (1) Kincaid's adult criminal history; (2) Kincaid's juvenile criminal history; (3) Alex's age at the time of his injuries; (4) Kincaid's position of trust with Alex; (5) the extensive and permanent injuries suffered by Alex; and (6) the trial court's opinion that Kincaid lied during his trial testimony. Although Kincaid urged that the trial court find his remorse and hardship to his family as mitigating circumstances, the trial court declined "to give substantial weight to these mitigators." Appellant's Appendix at 411.

---

1. Ind.Code § 35–42–2–1.5 (2004).

2. Ind.Code § 35–42–2–1 (2004).

3. We also rejected Kincaid's argument that the trial court abused its discretion by excluding Kincaid's demonstration of how his son was injured and that the evidence was insufficient to sustain his convictions. *Kincaid*, slip op. at 6–11. The Indiana Supreme Court summarily affirmed as to these issues. *Kincaid*, 837 N.E.2d at 1009 n. 2.

The trial court sentenced Kincaid to the Indiana Department of Correction for twenty years for each count to be served concurrently.

## I.

The first issue is whether Kincaid was sentenced in violation of *Blakely*. On June 24, 2004, the United States Supreme Court decided *Blakely*, which held that facts supporting an enhanced sentence must be admitted by the defendant or found by a jury. *Blakely*, 542 U.S. at 303–304, 124 S.Ct. at 2537; *Cotto v. State*, 829 N.E.2d 520, 527 n. 2 (Ind.2005). In *Smylie v. State*, the Indiana Supreme Court held that *Blakely* was applicable to Indiana's sentencing scheme and required that "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws." *Smylie v. State*, 823 N.E.2d 679, 686 (Ind.2005), *cert. denied*, — U.S. —, 126 S.Ct. 545, 163 L.Ed.2d 459 (2005). The Indiana Supreme Court recently noted that "*Blakely* and the later case *United States v. Booker* [, 543 U.S. 220, 125 S.Ct. 738, 756, 160 L.Ed.2d 621 (2005),] indicate that there are at least four ways that meet the procedural requirements of the Sixth Amendment in which such facts can be found and used by a court in enhancing a sentence." *Mask v. State*, 829 N.E.2d 932, 936 (Ind.2005).

> [A]n aggravating circumstance is proper for *Blakely* purposes when it is: 1) a fact of prior conviction; 2) found by a jury beyond a reasonable doubt; 3) admitted to by a defendant; or 4) stipulated to by the defendant, or found by a judge after the defendant consents to judicial fact-finding, during the course of a guilty plea in which the defendant has waived his *Apprendi* rights.

*Id.* at 936–937 (citing *Trusley v. State*, 829 N.E.2d 923, 925 (Ind.2005)).

Kincaid argues that five of the six aggravators were improper under *Blakely*. Kincaid concedes that the trial court properly considered his adult criminal history. The other aggravators were: (1) Kincaid's juvenile criminal history; (2) Alex's age at the time of his injuries; (3) Kincaid's position of trust with Alex; (4) the extensive and permanent injuries suffered by Alex; and (5) the trial court's opinion that Kincaid lied during his trial testimony.

### A. Juvenile History.

■ We begin by discussing Kincaid's juvenile criminal history. The Indiana Supreme Court recently held in *Ryle v. State*, 842 N.E.2d 320, 321, 2005 WL 3378469 (Ind.2005), that "juvenile adjudications are an exception to the *Apprendi* requirement that all facts used to enhance a sentence over the statutory maximum must be found by a jury beyond a reasonable doubt." Thus, the trial court did not violate *Blakely* when it considered Kincaid's juvenile criminal history as an aggravating factor.

■ Kincaid also argues that the trial court abused its discretion by considering his juvenile adjudications as an aggravating factor because his juvenile adjudications were remote in time.[4] As for the remoteness of Kincaid's juvenile adjudications, the Indiana Supreme Court has held that "[t]he chronological remoteness of a

---

4. The trial court found Kincaid had four juvenile adjudications for delinquency for acts that would have been theft if committed by an adult and one act that would have constituted auto theft if committed by an adult. We previously determined that the presentence investigation report reveals only three theft adjudications rather than four theft adjudications relied upon by the trial court. *Kincaid*, slip op. at 16. However, we held that Kincaid clearly had a juvenile criminal record, and we could not conclude that the trial court abused its discretion on this basis. *Id.* We reach the same conclusion on remand.

defendant's prior criminal history should be taken into account." *Buchanan v. State,* 767 N.E.2d 967, 972 (Ind.2002). However, "remoteness in time, to whatever degree," does not render a prior conviction irrelevant. *Id.* "The remoteness of prior criminal history does not preclude the trial court from considering it as an aggravating circumstance." *Id.* Thus, we held in the original appeal that the remoteness of Kincaid's adjudications did not preclude the trial court from considering them. *Kincaid,* slip op. at 17. We noted that Kincaid's argument might be more persuasive if his only criminal history was his juvenile criminal history. *Id.* However, his criminal record continued as an adult with convictions for illegal consumption of alcohol and public intoxication in 1987, intimidation as a class D felony in 1989, escape as a class D felony in 1989, and two counts of illegal consumption of alcohol in 1991. We conclude that the trial court did not abuse its discretion by considering Kincaid's juvenile record as an aggravating factor despite the time period between the juvenile adjudications and the instant offense. *See, e.g., Buchanan,* 767 N.E.2d at 972 (holding that the trial court did not abuse its discretion by considering the defendant's criminal history as an aggravating factor even though the defendant was fifty-eight years old at the time of sentencing and his criminal history consisted of convictions for two second degree burglaries when he was nineteen, robbery when he was twenty-two, and public indecency when he was thirty-nine).

B. *Alex's Age.*

▪ The next aggravating factor considered by the trial court is Alex's age at the time of the injuries. The trial court noted that Alex was two months old at the time of the injuries, was "utterly helpless," and "could not flee" or "defend himself in any

way." Sentencing Transcript at 62. Although Kincaid did not specifically testify as to Alex's age at the trial, Kincaid did testify that he was holding and feeding Alex with a bottle at the time of the injuries. Thus, the trial court properly considered the fact that Alex was an infant at the time of the injuries.

C. *Position of Trust.*

▪ The next aggravating factor is Kincaid's position of trust with Alex. The trial court properly considered Kincaid's position of trust with Alex because Kincaid admitted during his trial testimony that Alex was his son. *See, e.g., Trusley,* 829 N.E.2d at 927 (holding that the trial court properly considered the defendant's position of trust based upon the defendant's admission during the guilty plea hearing that he was the victim's daycare provider).

D. *Extensive and Permanent Injuries.*

▪ As for the extensive and permanent injuries suffered by Alex, at the sentencing hearing, Kincaid's counsel stated:

> I think that this has been a very difficult case because of the severe permanent injuries suffered by Alex in this case. I think everyone, including myself and Mr. Kincaid, we were quite moved, having seen the consequences of what happened to Alex during the trial. Mr. Kincaid does know these injuries are permanent, and in no way to minimize what happened to Alex, everyone realizes the injury to Alex is permanent, severe, obviously, the permanent brain injuries, the blindness, and that—that most likely shortened his life significantly. I mean, everyone agrees on that.

Sentencing Transcript at 54. Kincaid's counsel's statement was sufficient to constitute an admission that Alex's injuries were extensive and permanent.[5] *See, e.g.,*

5. On transfer, Kincaid argued in part that

Alex's extreme and permanent injuries should

*Trusley*, 829 N.E.2d at 925–926 923 (holding that a statement by counsel was sufficient to constitute an admission by Trusley that the victim was under twelve at the time of his death). Thus, the trial court properly considered it as an aggravator.

### E. *Lying During Testimony.*

 As for the trial court's opinion that Kincaid lied during his trial testimony, Kincaid argues both that the trial court abused its discretion by using this as an aggravator and that this aggravator was improper under *Blakely.* We need not decide whether this aggravator was proper under *Blakely* or whether the trial court abused its discretion by considering it because, even assuming that the trial court should not have utilized this aggravator, five of the six aggravators are valid under *Blakely,* and the trial court found no mitigating factors.[6] "Even when a trial court improperly applies an aggravator, a sentence enhancement may be upheld if other valid aggravators exist." *Pickens v. State,* 767 N.E.2d 530, 535 (Ind.2002). However, we note that "the existence of an aggravator does not relieve trial or appellate judges from the obligation to consider what weight to assign a particular aggravator and to balance the aggravators and

mitigators." *Trusley,* 829 N.E.2d at 927. "Where a trial court has used an erroneous aggravator, ... the court on appeal can nevertheless affirm the sentence if it can say with confidence that the same sentence is appropriate without it." *Witmer v. State,* 800 N.E.2d 571, 572–573 (Ind.2003).

Even after excluding the trial court's opinion that Kincaid lied during his testimony as an aggravator, five significant aggravators, i.e., Kincaid's adult criminal history, his juvenile criminal history, his position of trust with Alex, Alex's young age, and Alex's extensive and permanent injuries, remain. Additionally, the trial court found no mitigating factors. Given these factors, we can say with confidence that the trial court would have imposed the same twenty-year sentence even without the two improper aggravating factors. *See, e.g., McCann v. State,* 749 N.E.2d 1116, 1121 (Ind.2001) (holding that the court could say with confidence that the trial court would have imposed the same sentence where one of the aggravating circumstances was improper, there were no mitigating circumstances, and there were three other valid aggravating circumstances, including the defendant's criminal history).

not have been considered as an aggravator because his severe injuries were an element of the offense. *See* Kincaid's Petition for Transfer at 6. However, Kincaid did not make this argument in his original appellant's brief. As the Supreme Court noted in this case, "an appellant in a criminal case must raise a particular sentencing claim in his or her initial brief on direct appeal in order to receive review on the merits." *Kincaid,* 837 N.E.2d at 1010.

6. Although Kincaid also argues that the trial court abused its discretion by overlooking the substantial amount of family support that Kincaid received and the volume of letters the trial court received regarding Kincaid's good character and good deeds, we previously held

that the trial court considered Kincaid's family support and character as evidenced by the letters sent to the trial court but that the trial court declined to give substantial weight to the proposed mitigators. *Kincaid,* slip op. at 19. We held that the trial court did not overlook the letters but simply did not assign them the same weight that Kincaid suggested. *Id.* We reach the same conclusion on remand and cannot say that the trial court abused its discretion by refusing to give significant weight to these proposed mitigating factors. *See, e.g., Buchanan v. State,* 767 N.E.2d 967, 972 (Ind.2002) (holding that the trial court did not overlook and fail to consider the mitigating factors urged by the defendant).

## II.

■ The next issue is whether Kincaid's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Kincaid argues that the maximum sentence was inappropriate and asks that we reduce his sentence to the presumptive.

The Indiana Supreme Court has noted that "the maximum possible sentences are generally most appropriate for the worst offenders." *Buchanan,* 767 N.E.2d at 973.

This is not, however, a guideline to determine whether a worse offender could be imagined. Despite the nature of any particular offense and offender, it will always be possible to identify or hypothesize a significantly more despicable scenario. Although maximum sentences are ordinarily appropriate for the worst offenders, we refer generally to the class of offenses and offenders that warrant the maximum punishment. But such class encompasses a considerable variety of offenses and offenders.

*Id.* (internal citations omitted). Thus, we must determine whether this case falls within the class of offenses and offenders that warrant the maximum punishment.

Our review of the nature of the offense reveals that, while Kincaid was entrusted with the care of his two-month-old son, Alex, he shook the baby and hit the baby's head on a surface with a "great degree of force." Transcript at 286. As a result, Alex suffered shaken baby syndrome with impact, which destroyed seventy-five percent of his brain and left Alex profoundly disabled. Alex is unable to see, communicate, sit, stand, or walk and requires total care from his adoptive family. Alex is not expected to live beyond his teen years.

We next review the character of the offender. Kincaid argues that his character does not justify the maximum sentence and points to his record in raising his two daughters and to the letters submitted by his friends and family. The record also reveals that Kincaid has both a juvenile criminal history and an adult criminal history. In 1980 Kincaid committed an offense that would have been theft if committed by an adult. He received an informal adjustment but violated the informal adjustment when he later committed offenses that would have been theft and auto theft if committed by an adult. He was then placed on formal probation. In 1984, he again committed an offense that would have been theft if committed by an adult and was sentenced to the Indiana Boys' School. In 1987, he was charged with illegal consumption of alcohol and received a disposition of "Six months good behavior, 10 days jail suspended, $40 Court costs." Appellant's Appendix at 35. In 1988, he was charged with two counts of illegal consumption of alcohol and received a disposition of thirty days in jail for each offense, with credit for eight days served and fifty-two days suspended, and was placed on probation. He violated his probation, and the fifty-two day suspended sentence was imposed. As an adult, Kincaid was convicted of misdemeanor illegal consumption of alcohol and public intoxication in 1988. In 1989, he was convicted of intimidation as a class D felony. He was sentenced to work release and later violated work release rules. As a result, the trial court imposed six months of his suspended sentence. In

1989, Kincaid was found guilty of escape as a class D felony and again violated his probation. Lastly, in 1991, Kincaid was convicted of illegal consumption of alcohol on two occasions.[7] Kincaid had no convictions between 1991 and the time of the instant convictions.

Although there is a significant gap of time between Kincaid's last conviction and the instant convictions, given the extreme consequences of Kincaid's battery and the fact that the battery was inflicted upon Kincaid's infant son and after due consideration of the trial court's decision, we cannot say that the twenty-year sentence imposed by the trial court is inappropriate in light of the nature of the offense and the character of the offender. *See, e.g., Johnson v. State*, 830 N.E.2d 895, 898 (Ind. 2005) (holding that the maximum sentence was not inappropriate where, while the defendant's criminal history was not extensive, both of his misdemeanors were crimes of violence or physical force, he had accumulated his criminal history at the young age of twenty-five, and his crimes were particularly heinous); *Laux v. State*, 821 N.E.2d 816, 823 (Ind.2005) ("Although we agree that Laux's lack of criminal history, work ethic, educational achievement, and remorse have value; we cannot ignore the brutality of the crime that he committed. In light of all of the circumstances surrounding Laux's crime, we are not persuaded that the sentence is inappropriate.").

For the foregoing reasons, we affirm Kincaid's sentence.

Affirmed.

MAY, J. and VAIDIK, J. concur.

---

7. Our supreme court has found a sentence inappropriate where a defendant convicted of a class B felony had a criminal history of only alcohol offenses. *See Ruiz v. State*, 818 N.E.2d 927, 929 (Ind.2004) ("We conclude that these convictions for alcohol-related offenses are at best marginally significant as aggravating circumstances in considering a sentence for a Class B felony."). The court held that the "[s]ignificance varies based on the gravity, nature and number of prior offenses as they relate to the current offense." *Id.* (citing *Wooley v. State*, 716 N.E.2d 919, 929 (Ind.1999), *reh'g denied*). While many of Kincaid's convictions are alcohol offenses, he also has adjudications for offenses that would have been theft and auto theft if committed by an adult and felony offenses for intimidation and escape. Consequently, we find this case distinguishable from *Ruiz*.