## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 22 2015, 8:24 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jeremy K. Nix
Matheny, Hahn, Denman & Nix, L.L.P.
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Melvin J. Knetter, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 22, 2015 <br><br> Court of Appeals Case No. <br> 35A04-1506-CR-646 <br><br> Appeal from the Huntington <br> Circuit Court <br><br> The Honorable Thomas M. Hakes, <br> Judge <br><br> Trial Court Cause No. <br> 35C01-1404-FA-112 |

**Crone, Judge.**

# Case Summary

Melvin J. Knetter appeals his sixty-year aggregate sentence for two counts of class A felony child molesting, four counts of class B felony sexual misconduct with a minor, and three counts of class C felony incest, all of which were committed against his daughter, arguing that it is inappropriate based on the nature of the offenses and his character. We conclude that he has failed to carry his burden to persuade us that his sentence is inappropriate, and therefore we affirm.

# Facts and Procedural History

Knetter was married to Rebecca Knetter, and they had a child, K.K., who was born in December 1996. In 2010, Knetter and Rebecca moved to a home on Etna Road in Huntington County. K.K. was thirteen years old and started eighth grade that year. One day in the living room, Knetter began kissing K.K. on the face and neck and penetrated K.K.'s vagina with his finger. K.K. said, "No," and tried to push him away. Tr. at 323. He started to pull her toward her bedroom. She fought him and kept saying no. She tried to grab the wall but he pulled her away. He finally picked her up and carried her to her bedroom, where he removed her clothing and had sexual intercourse with her. It hurt. She turned her head away and cried. Although that was the first time that Knetter had sexual intercourse with K.K., he had been engaging in inappropriate touching since she was in second or third grade. *Id*. at 286.

[3]     On another occasion in 2011 when K.K. was still in eighth grade, Knetter came into her bedroom, took off her clothes, and flipped her over on her stomach, which scared her. Knetter had sexual intercourse with her from behind and ejaculated on her back. Knetter had sexual intercourse with K.K. more than twenty times in the Etna Road house. Afterward, he would apologize and say that it would not happen again. K.K. asked Knetter why he did these sexual acts to her. Knetter responded that he was upset that she did not love him the way he loved her. *Id*. at 349. She told him that she wanted a father-daughter relationship without the sex acts.

[4]     In 2011, Rebecca moved to North Carolina as a result of marital issues. When K.K. finished eighth grade, she went to live with her mother and remained with her during her ninth-grade year. In 2012, when K.K. was fifteen and starting tenth grade, she returned to live with Knetter. At that time, Knetter was living with another woman with whom he had had a child. However, Knetter began sexually molesting K.K. again by having intercourse with her and putting his finger in her vagina. This became a weekly occurrence stopping only for about a month. In one incident, after K.K. turned sixteen, she tried to run away from Knetter when he began to rub against her, but he caught her and "forced it." *Id*. at 362. Another time, Knetter penetrated K.K.'s anus with his penis. "It hurt really bad and [K.K.] freaked out and jumped up." *Id*. at 372. Knetter did not try that again.

[5]     After she completed tenth grade, K.K. moved with Knetter to a new home in Huntington County, where he continued to digitally penetrate K.K.'s vagina

and have sexual intercourse with her. Knetter also made K.K. engage in oral sex on two occasions by placing his penis in her mouth.

[6] K.K. asked her father why he did these sexual acts to her and told him that other fathers did not do this to their daughters. Knetter replied that she did not know what goes on behind closed doors. Another time, K.K. told Knetter that she was afraid that she would go to hell because of what he did to her, and he told her that incest was in the bible so it was okay. Sometimes, when K.K. would ask Knetter permission to go to a friend's house, he would tell her that she "owe[d] him one," meaning that she "would have to allow him to have sex with [her]." *Id.* at 391. On some occasions, Knetter would give K.K. money after having sex with her, and this made her feel "like a whore." *Id.* at 394.

[7] When K.K. was in eleventh grade, she went to visit her mother in North Carolina for Christmas. In January 2014, K.K. revealed to her halfsister that Knetter had been having sex with her. Her halfsister urged her to tell Rebecca. K.K. finally told her mother about the sexual abuse, and Rebecca reported it to the local authorities in North Carolina and the Huntington County Sheriff's Department.

[8] In April 2014, the State charged Knetter with two counts of class A felony child molesting (Counts I-II), four counts of class B felony sexual misconduct with a minor (Counts III-VI), and three counts of class C felony incest (Counts VII-IX). Following a four-day jury trial, Knetter was found guilty as charged. At sentencing, the trial court found no mitigating factors and found that Knetter's

violation of his position of authority and trust and his criminal history, consisting of a conviction for indecent liberty with a child and failure to register as a sex offender, were aggravating factors. The trial court sentenced Knetter to forty-five years each for Counts I-II; fifteen years each for Counts III-VI; and six years each on Counts VII-IX. The sentences on Counts I-IV were concurrent to each other but consecutive to the sentence for Counts V-IX, which were concurrent to each other, for an aggregate sentence of sixty years, all executed. This appeal ensued.

## Discussion and Decision

[9] Knetter asks us to revise his sentences so that they are all concurrent pursuant to Indiana Appellate Rule 7(B), which states, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When reviewing a sentence, our principal role is to leaven the outliers rather than necessarily achieve what is perceived as the correct result. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). In addition, "appellate review should focus on the forest–the aggregate sentence–rather than the trees–consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id*. "We do not look to determine if the sentence was appropriate; instead we look to make sure the sentence was not inappropriate." *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). Knetter has the burden to show that his sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218.

[10]     Turning first to the nature of the offense, we observe that "the advisory sentence is the starting point the Legislature selected as appropriate for the crime committed." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). Here, all of Knetter's sentences are above the advisory[1] and his sentences for Counts I-IV are consecutive to Counts V-IX. Knetter does not challenge the enhanced individual sentences but requests that all his sentences be revised to concurrent terms. He argues that consecutive terms are inappropriate because "all of the charges involve one victim" and that over the period covered by the charging informations, Counts I through IV happened more than twenty times and Counts V through IX occurred weekly. Appellant's Br. at 7.

[11]     Neither of these facts persuades us that his consecutive sentences are inappropriate. To the contrary, Knetter failed to provide the love and protection to K.K. that she needed and deserved. *See Kincaid v. State*, 839 N.E.2d 1201, 1205 (Ind. Ct. App. 2005) (observing that a parent's position of trust is relevant to sentencing). He abused his position as a father to take advantage of K.K. by misleading her about the morality of his sexual misconduct and using his authority to require sexual favors in exchange for his permission. He damaged her self-esteem by giving her money after sexually abusing her and making her feel "like a whore." Tr. at 394. He repeatedly and

---

[1] The sentencing range for a class A felony is twenty to fifty years with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. The sentencing range for a class B felony is six to twenty years with an advisory sentence of ten years. Ind. Code § 35-50-2-5. The sentencing range for a class C felony is two to eight years with an advisory sentence of four years. Ind. Code § 35-50-2-6.

regularly sexually abused her over a period of many years, and he attempted acts that frightened and hurt her.

[12] As for Knetter's character, he stresses that he maintained steady employment, provided financial support to K.K. while she lived with him, and has not been convicted of any crimes for the last fourteen years. However, Knetter has a 1993 conviction for indecent liberty with a child, a 1998 conviction for failing to register as a sex offender, and a 2000 conviction for operating while intoxicated. The first two convictions are directly related to the current offenses. *See Ruiz v. State*, 818 N.E.2d 927, 929 (Ind. 2004) (significance of a defendant's criminal history "'varies based on the gravity, nature and number of prior offenses as they relate to the current offense.'") (quoting *Wooley v. State*, 716 N.E.2d 919, 929 (Ind. 1999)). Furthermore, Knetter engaged in sexual molestation of and sexual misconduct with K.K. for four years before he was charged. K.K. made it clear to Knetter that she did not want him to engage in sexual acts with her, but he callously ignored her needs and feelings.[2] We conclude that Knetter has failed to persuade us that his sentence is inappropriate. Therefore, we affirm.

---

[2] The cases cited by Knetter to argue that his sentence is inappropriate are readily distinguishable. In *Rivers v. State*, 915 N.E.2d 141,144 (Ind. 2009), the defendant committed only two acts of molestation and then stopped of his own accord and did not commit any other offenses in the seven years that passed before he was charged. In *Laster v. State*, 918 N.E.2d 428, 436 (Ind. Ct. App. 2009), the defendant had no criminal history. In *Monroe v. State*, 886 N.E.2d 578, 580 (Ind. 2008), the defendant's criminal history consisted only of driving-related offenses. Finally, in *Harris v. State*, 897 N.E.2d 927, 930 (Ind. 2008), the defendant's past criminal convictions, consisting of two class D felony theft convictions and numerous driving traffic violations, were not significant aggravators in relation to a class A felony.

Affirmed.

Vaidik, C.J., and Bailey, J., concur.