## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 31 2017, 6:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Eric K. Koselke
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alex E. Witmer,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

July 31, 2017

Court of Appeals Case No.
20A04-1610-CR-2231

Appeal from the Elkhart Superior Court

The Honorable Joseph V. Sutton, Special Judge

Trial Court Cause No.
20D01-0111-CF-241

**May, Judge.**

[1]     Alex E. Witmer pled guilty in 2002 to charges of Class B felony armed robbery[1] and murder,[2] and the trial court sentenced him to an aggregate sentence of eighty-five years executed.  After his sentence was affirmed on direct appeal, Witmer filed a petition for post-conviction relief, which the post-conviction court denied.  Witmer appeals that denial asserting his sentencing court relied on aggravating factors not charged or subject to proof to a jury beyond a reasonable doubt in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), *reh'g denied*.

[2]     Freestanding claims of sentencing error are, and remain, unavailable in post-conviction proceedings.  *Reed v. State*, 856 N.E.2d 1189, 1193-94 (Ind. 2006) ("The law in this jurisdiction is settled that sentencing issues which are known or available at the time of direct appeal but are not raised are waived for post-conviction review.").  Nevertheless, an extremely improbable set of procedural circumstances, which we doubt will ever again occur, leads us to consider the merits of Witmer's sentencing claim.  *See infra* at 11, n.4.  After determining the three aggravators found by the trial court without a jury and used to enhance Witmer's sentence did not violate Witmer's right to a jury as explained in *Blakely*, we affirm.

---

[1] Ind. Code § 35-42-5-1 (1986).

[2] Ind. Code § 35-42-1-1 (1998 & Supp. 1999).

# Facts and Procedural History

[3] Our Indiana Supreme Court set out the facts of this case when it reviewed Witmer's sentence on direct appeal:

[4] Alex Witmer committed robbery and murder in one two-year period. On March 25, 1998, sixteen-year-old Witmer pointed a gun at Preston Hall in Elkhart County during a "drug deal gone bad." Initially, Hall thought that Witmer was playing around, but Witmer pointed the rifle at Hall's throat and stated, "Give me your damn wallet." (App. at 53.) Hall complied, and Witmer took the wallet, which contained money. The State thereafter charged Witmer with robbery on September 30, 1998, though it did not serve the warrant until November 1999.

[5] Almost one and a half years after the robbery, Witmer, who had turned eighteen[,] picked up Jason Powell and drove to the Pierre Moran Mall. Witmer had a .22 caliber rifle in his car. As they rode about town, Witmer and Powell discussed shooting an African-American to earn a tattoo of a spider web. Witmer told Powell that one earns the tattoo by killing a black person. Powell expressed an interest in "earning" the tattoo, and Witmer "called him on it," meaning "put up or shut up." (GPR at 24.)[3]

[6] As they drove around the mall, Witmer and Powell noticed seventeen-year-old Sasezley Richardson walking through the Sears parking lot. (GPR at 25.) Neither of them knew Richardson. Powell told Witmer to drive towards Richardson. Witmer drove close to the victim as Powell picked up the rifle and began to shoot. Powell fired ten to twelve shots at Richardson. As they abandoned the scene, Witmer looked into

---

[3] The "GPR" abbreviation is used to reference citation to the transcript of the guilty plea.

the mirror and saw the victim fall to the ground. Witmer and Powell drove away, without rendering any aid. Richardson died from a gunshot wound to the head.

[7] Witmer drove Powell home and then returned to his house. He later took the rifle used in the shooting to his younger brother, who dismantled the gun and threw it in the river behind his father's house.

[8] The State requested the death penalty against Witmer but later agreed to drop the request in return for a plea of guilty. (GPR at 29.) The trial court sentenced Witmer to twenty years for robbery and sixty-five years for murder, to be served consecutively. (App. at 136.) It found several aggravating circumstances: Witmer's history of criminal or delinquent activity, his need for rehabilitative treatment best provided by commitment to a penal facility, that imposition of a reduced sentence would depreciate the seriousness of the crime, and the nature and selection of the victim - including the racial motivation of the perpetrators. It also found three mitigators: Witmer's age, his upbringing, and his psychological conditions.

[9] On appeal, Witmer (1) challenged the "correctional need" and "depreciate the seriousness" aggravators, (2) claimed there were several mitigators that should have been found and that the court gave inadequate weight to some it did find, and (3) contended the resulting sentence was unreasonable. The Court of Appeals agreed that the "depreciate" finding was inappropriate, but otherwise rejected Witmer's claims and affirmed the sentence. *Witmer v. State*, No. 20A03-0208-CR-281, 790 N.E.2d 182 (Ind. Ct. App. 2003).

*Witmer v. State*, 800 N.E.2d 571, 571-72 (Ind. 2003) (footnote text from original; footnote number changed), *reh'g denied*.

On December 23, 2003, our Supreme Court summarily affirmed the Court of Appeals decision, *id*. at 572, but granted transfer to explicitly hold "without hesitation that racially motivated crimes are intolerable and may constitute an aggravating circumstance." *Id*. at 573. On January 22, 2004, Witmer filed a petition for rehearing. On September 10, 2004, Witmer requested permission to file an amended rehearing petition to argue his sentence was unconstitutional under *Blakely*, 542 U.S. 296, a case decided by the United States Supreme Court in June 2004. The Indiana Supreme Court denied Witmer's petition for rehearing on September 30, 2004.

On October 6, 2005, Witmer filed a Petition for Post-Conviction Relief arguing:

> 8. The grounds known to petitioner at this time for vacating his sentence are as follows: The sentence was imposed in violation of the Sixth and Fourteenth Amendments to the Constitution of the United States and Art. 1, § 13 of the Constitution of the State of Indiana because the sentence was imposed using aggravating factors which were not plead in the charging instruments nor submitted to a jury and found unanimously beyond a reasonable doubt by a jury. These procedures violated the Court's holding in Blakely v. Washington, 542 U.S. 296 (2004), as interpreted in Smylie v. State, 823 N.E.2d 679 (Ind. 2005), cert. [denied].

> 9. The facts supporting the claim plead [sic] in paragraph 8 are: The trial court aggravated Petitioner's sentences for accessory to murder and robbery based upon three factors: (1) a lesser sentence would depreciate the seriousness of the offense; (2) the defendant needs correctional treatment; and (3) the defendant has a history of criminal or delinquent activity. These factors were not plead by the State in any charging document and Petitioner had no notice of them. These factors were not presented to a jury

and found by them unanimously and beyond a reasonable doubt. There was no knowing, voluntary, and intelligent waiver secured from Petitioner regarding these constitutionally guaranteed rights.

(App. Vol. II at 31) (underlining in original).

[14] The post-conviction court held a hearing on that petition on September 11, 2011, and further evidence was presented on May 7, 2015. Witmer's Petition for Post-Conviction Relief was denied in an order that provided the following pertinent findings:

[15] 4. Regarding the murder, Petitioner testified during his guilty plea hearing that he obtained a firearm from his father's house prior to the murder. On the evening of the murder, Petitioner testified that he and his friend, Powell, were conversing about Powell's desire to kill a black person so that Powell could get a tattoo that was a symbol for killing an African American (to white supremacists). Petitioner then "called [Powell] on it," encouraging him to commit the killing or cease talking about it. Petitioner drove the vehicle in which Powell was a passenger around the City of Elkhart during which time Petitioner noticed a black person around the area of the Sears store at Pierre Moran Mall in Elkhart. Petitioner then circled the area at the direction of Powell while Powell pointed the gun out the window and fired twelve (12) shots at the black male. Thereafter, Petitioner drove away without rendering any aid to the individual who had been shot, took Powell home, then later disposed of the gun. . . .

* * * * *

[16] 6. A sentencing hearing was held beginning on the 5th day of March, 2002, at which time Petitioner's counsel advised there

were no changes to the Pre-Sentence Investigation Report and supplemented same with evidence presented over the course of two (2) days of testimony. The State also presented evidence of aggravating circumstances. The Court articulated numerous aggravating factors, among which were Petitioner's criminal history (from the Pre-Sentence Investigation Report), and the escalating nature of his criminal history (specifically citing a Criminal Mischief adjudication as a juvenile, a gun offense on school property as a juvenile, the Armed Robbery and the Murder). In addition, the Court articulated a specific aggravating factor in the context of the nature and circumstances of the crime, namely that the victim was selected merely due to his race, and the use of a deadly weapon during the murder. Petitioner specifically admitted the victim's race was the motivating factor for the murder during his guilty plea testimony, and also admitted the use of the deadly weapon. The Court articulated that it had considered all of the mitigating evidence and found that the only mitigating factors present in Petitioner's case were his age, upbringing and psychological condition. The Court then specifically found that the sentences should be run consecutive to each other as the aggravated sentences were justified, and sentenced Petitioner to a term of twenty (20) years for the Robbery, and sixty-five (65) years for the Murder. The State dismissed the Death Penalty enhancement.

7.     Petitioner filed an appeal on the 12th day of November, 2002, alleging that the sentences were manifestly unreasonable and that the judge relied on inappropriate aggravating factors. The Indiana Court of Appeals agreed one of the factors the judge considered was inappropriate (depreciation of the seriousness of the offense if less than an aggravated sentence was imposed); however, found that the other aggravating factors were reasonable and affirmed the sentences in June of 2003. Transfer was sought and granted, on December 23, 2003, by the Indiana Supreme Court who summarily affirmed the findings of the Indiana Court of Appeals and went on to further articulate the

severity of the aggravating factor that the crime was racially motivated. *Witmer v. State*, 800 N.E.2d 571 (Ind. 2003), *rehearing denied*.

8.      On the 22nd day of January 2004, Petitioner filed a Motion for Rehearing in the Indiana Supreme Court which was denied on the 30th day of September 2004.

9.      On June 24, 2004, the United State[s] Supreme Court issued its decision in *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L.Ed.2d 403 (2004), holding that, other than a prior criminal conviction and facts admitted by a defendant, any fact to be considered as an aggravating factor to increase the statutory penalty must be specifically pled and proven beyond a reasonable doubt to a jury. *Id.* at 2536.

10.      On March 9, 2005, the Indiana Supreme Court held that portions of [ ] Indiana's sentencing scheme do violate the Sixth Amendment right to trial by jury and that the new procedural ruled defined in *Blakely* should apply to all cases pending on direct review at the time it was decided. *Smylie v. State*, 823 N.E.2d 679 (Ind. 2005)[, *cert. denied*.]

11.      In as much as the Indiana Supreme Court had not ruled on Petitioner's Petition for Rehearing at the time *Blakely* was decided, the subject case does appear to have been pending on direct review in June, 2004.

12.      Additionally, counsel for Petitioner filed a Petition for Permission to File Amended Brief on or about the 10th day of September, 2004, which specifically argued that Blakely applied to the subject case. However, notwithstanding consideration of said argument, the Indiana Supreme Court denied rehearing and certified its Opinion affirming Petitioner's sentence. *Witmer v. State*, 800 N.E.2d 571 (Ind. 2003).

(App. Vol. II at 105-107) (internal record citations omitted).

The court then concluded, in necessary part:

2.      Petitioner contends the Trial Court relied on aggravating circumstances neither admitted by him nor proven to a jury beyond a reasonable doubt in enhancing his sentence, in violation of his Sixth Amendment rights as set forth in *Blakely v. Washington*, *supra* and adopted by the Supreme Court of Indiana in *Smylie v. State*, *supra*. Pursuant to *Blakely* and *Smylie*, Trial Courts may only enhance a sentence above the presumptive time based upon facts that are established in one of several ways: (1) as a fact of prior conviction; (2) by a jury beyond a reasonable doubt; (3) when admitted by a defendant; and (4) in the course of a guilty plea where the defendant waived his or her Sixth Amendment rights and stipulated to certain facts. *Trusley v. State*, 829 N.E.2d 923, 925 (Ind. 2005). In both *Blakely* and *Smylie*, the Courts focused on how certain facts were found, not as much with what the aggravators were alleged to be. *Id*.

3.      Contrary to Petitioner's argument, the evidence in the subject case demonstrates that the Trial Court did rely upon the Petitioner's criminal history and facts that the Petitioner personally admitted during his guilty plea hearing in determining the sentence. *Id*.

4.      The Trial Court specifically enumerated the Petitioner's juvenile and criminal history as an aggravating factor, as well as the fact that the crime of murder was racially motivated. Juvenile adjudications are available to consider as aggravating factors just as adult convictions may be. *Ryle v. State*, 842 N.E.2d 320 (Ind. 2005)[, *cert. denied*], and *Kincaid v. State*, 839 N.E.2d 1201 (Ind. [Ct.] App. 2005). As Petitioner admitted details of the crime, the use of a deadly weapon in the murder, as well as the racial motivation for same during his own testimony after being

> advised of his rights and waived same, the Court's finding that these aggravating factors existed was permissible under both *Blakely* and *Smylie*.

(*Id*. at 108.) The post-conviction court therefore denied Witmer's petition for post-conviction relief.

## Discussion and Decision

A post-conviction petitioner has the burden of proving by a preponderance of the evidence that he is entitled to relief. *Humphrey v. State*, 73 N.E.3d 677, 681 (Ind. 2017). If the post-conviction court denies him relief, he appeals from a negative judgment and "must show that the evidence leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court." *Id*. The court entered findings of fact when denying Witmer's petition, and we may not reverse the court's findings and judgment unless Witmer demonstrates "clear error - that which leaves us with a definite and firm conviction that a mistake has been made." *See id*. at 682 (quoting *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000), *reh'g denied*, *cert. denied*). However, we owe no deference to the post-conviction court's conclusions of law. *Id*.

Pursuant to *Blakely,* when a trial court enhances a defendant's sentence beyond the fixed term provided by our statute, the aggravating circumstances specified for that enhancement must be proven beyond a reasonable doubt to a jury, unless the aggravator was admitted by the defendant or is prior criminal convictions. *Smylie*, 823 N.E.2d at 682-83 (citing *Blakely*, 542 U.S. at 301 (prior

conviction), at 303 (admitted by defendant)). Our Indiana Supreme Court considered the retroactive application of *Blakely* and determined *Blakely*'s holding applied retroactively to cases pending on direct review or not yet final at the time *Blakely* was announced, so long as those appeals had asserted some form of sentencing error when originally filed. *Id.* at 690-91.

[29] Although *Blakely* applies to Witmer's sentence,[4] we cannot hold the post-conviction court committed clear error when it concluded *Blakely* does not require Witmer be resentenced. Following Witmer's direct appeal, three aggravators remained in support of Witmer's maximum consecutive sentences: Witmer's history of criminal or delinquent activity; Witmer's need for correctional treatment; and the racial motivation for the murder. Witmer asserts all of those aggravators are improper.

---

[4] Witmer filed a petition for rehearing in January 2004, and *Blakely* was decided in June 2004. In September 2004, Witmer filed a motion asking the Indiana Supreme Court to re-consider its decision affirming his sentencing in light of *Blakely*. Shortly thereafter, his petition for rehearing was denied. Because Witmer's direct appeal was still in process and he raised a sentencing argument on appeal, we affirm the post-conviction court's conclusion that *Blakely* applies to Witmer's sentencing. *See Smylie*, 823 N.E.2d at 690-91 (holding *Blakely* applies to all cases on direct review at the time *Blakely* was decided, so long as the appeal had raised a sentencing issue).

We also agree with the post-conviction court's decision to address the merits of Witmer's *Blakely* argument, rather than summarily deny his petition based on the State's *res judicata* argument. Although the Indiana Supreme Court denied Witmer's petition for rehearing after Witmer filed a petition asking the Court to allow him to submit an amended brief on transfer to argue his sentence was wrong under *Blakely*, the Indiana Supreme Court did not, in fact, grant Witmer's request to file that new brief. Nor did the Indiana Supreme Court decide until 2005 whether, how, and when *Blakely* would apply to Indiana's sentencing scheme or to defendants who had been sentenced thereunder. In this rare circumstance, we decline to hold the Indiana Supreme Court considered the implications of *Blakely* on the aggravators found by the trial court before denying Witmer's petition for rehearing in 2004, and we address the merits of Witmer's *Blakely* argument.

[30] Witmer asserts he "never admitted any juvenile convictions during his guilty plea hearing." (Br. of Appellant at 9.) However, as the post-conviction court concluded, juvenile adjudications "may be considered as a 'prior conviction' for the purposes of sentencing under *Blakely*." *Mitchell v. State*, 844 N.E.2d 88, 92 (Ind. 2006). Our Indiana Supreme Court so held because "juvenile adjudications afford individuals sufficient procedural safeguards [to be] considered as a 'prior conviction.'" *Id*. Thus, Witmer's sentencing court did not commit any error by considering Witmer's juvenile adjudications as an aggravator. *See id*. ("the trial court properly considered Mitchell's juvenile record as part of his criminal history").

[31] Next, Witmer asserts "there was no evidence subject to proof beyond a reasonable doubt that he needed correctional treatment." (Br. of Appellant at 10.) We have held, however, that need for correctional or rehabilitative treatment best provided by commitment in a penal facility "does not implicate *Blakely*" when it derives from a defendant's criminal history. *Gillem v. State*, 829 N.E.2d 598, 606 (Ind. Ct. App. 2005), *trans. denied*. The trial court in *Gillem* found a need for correctional rehabilitation because "prior attempts of probation and court ordered counseling have been unsuccessful and the Court is unsure of exactly what will deter [Gillem] from this behavior except through penal incarceration." *Id*. at 606 n.6 (quoting Tr. at 85).

[32] At Witmer's sentencing, the trial court said:

> One of the statutory factors is whether or not I believe the
> defendant needs correctional rehabilitative treatment in excess of

the presumptive sentence – ah – when I take a look at what's happened particularly in respect to the homicide there had been prior incarcerations, probation, parole. All of those attempted to work with Mr. Witmer prior to the commitment or being involved with the homicide. Certainly those statutory factors are meet [sic]. I mean it's just clear here. It's been argued that his criminal behavior escalated. It certainly did escalate going from a criminal mischief up to a homicide.

(Exhibit Book Vol. 4 at 136.) As the trial court's finding of Witmer's need for correctional rehabilitation was merely derivative of Witmer's criminal history, this judicial finding did not violate *Blakely*. *See Gillem*, 829 N.E.2d at 606.

[33] Finally, there remains the aggravator of the racial motivation for the murder. At his guilty plea hearing, Witmer admitted Powell "had previously been talking about wanting to kill a black person to get what he thought was a symbol of his killing an African American and I called him on it." (Exhibit Book Vol. 3 at 24.) The prosecutor asked if Witmer had told Powell, essentially, to "put up or shut up[.]" (*Id*. at 25.) Witmer confirmed that meaning. Witmer also admitted that after they saw Richardson, Witmer drove the car around the block so that Powell could shoot at Richardson. Witmer admitted that the gun was his, that he did not stop Powell from shooting, that he did not stop to help Richardson even though he knew Richardson had been shot, and that he disposed of the gun after the shooting. Witmer's admission at the guilty plea hearing that Robertson's murder was racially motivated rendered that aggravator proper under *Blakely*. *See Smylie*, 823 N.E.2d at 683 (*Blakely* permits sentencing court to consider facts admitted by the defendant).

[34] Witmer has not demonstrated that any of the three aggravators that remained after his direct appeal were invalid under *Blakely*, and our Indiana Supreme Court already determined his sentence lengths were valid based on those same three aggravators. *See Witmer*, 800 N.E.2d at 573-74 (trial court adequately assessed aggravators and mitigators to arrive at sentence). Thus, Witmer has not demonstrated the post-conviction court's decision was contrary to law, and we affirm the denial of Witmer's petition for post-conviction relief.

[35] Affirmed.

Brown, J., and Pyle, J., concur.